ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
AARON BRIGHT,                                         :

                Petitioner,         :

        -against-                                    :  **REPORT AND RECOMMENDATION**

CATHERINE A. COOK, Superintendent at   :  10 Civ. 07686 (RMB)(KNF)
Otisville Correctional Facility, and The
Attorney General of the State of New York, :
ANDREW CUOMO,[1]
                                               :
                Respondents.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD M. BERMAN, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

On October 7, 2010, Aaron Bright ("Bright") filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging the trial court violated his Sixth Amendment right "to a public trial when it ruled, two days after a hearing held pursuant to People v. Hinton, 31 N.Y.2d 71[, 334 N.Y.S.2d 885] (1972),[2] that his brother would be excluded from the courtroom during testimony by the State's single eyewitness, the undercover officer, and that it would not reopen the hearing." On October 26, 2010, Bright amended his petition to correct the

---

[1] Since the petitioner was in custody at the time the petition was filed, the Attorney General need not be named as a defendant. See Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] Such a hearing is conducted to determine whether the courtroom should be closed to the public.

1

caption.³ The respondent opposed the petition.

## BACKGROUND

On November 3, 2005, on the Lower East Side of Manhattan, an undercover New York City police officer ("the undercover"), participating in a buy-and-bust operation, approached Bright outside a store and asked if he knew who had "jumbos," a slang expression for $20 bags of crack cocaine. Bright asked the undercover how much he wanted to buy and the undercover responded that he had sixty dollars. Bright took a couple of steps away from the undercover and proceeded to talk with Ramon Velez ("Velez"). As they spoke, Velez looked at the undercover and Bright and made a slight motion with his face and his arm, toward the undercover. Velez approached the undercover and asked if he wanted all the drugs in one bag, which the undercover confirmed. Michael Pagan ("Pagan") approached Velez, telling him to "hurry," after which Pagan and Velez walked inside a store, leaving Bright and the undercover waiting outside. After a few minutes, Velez gave the undercover a bag of crack cocaine in exchange for $60 in pre-recorded money. Bright, Velez and Pagan were subsequently arrested. A New York grand jury charged Bright with third-degree criminal sale of a controlled substance, third-degree criminal possession of a controlled substance and criminal sale of a controlled substance, in or near school grounds.

On July 11, 2006, a <u>Hinton</u> hearing was conducted, based on the prosecutor's motion to close the courtroom to the public, during the undercover's trial testimony, and to permit the

---

³ Bright explained in his amended petition that the amendment consists "of a correction of the identity of the first respondent (the current Superintendent of the Otisville Correctional Facility is Catherine A. Clark), and replacement of Ms. Hilpert as lead attorney." However, the amended caption names, correctly, Catherine A. Cook, as the Superintendent of the Otisville Correctional Facility. At the time of this writing, the Superintendent of the Otisville Correctional Facility is Ernest Edwards.

undercover to testify under his shield number, so as not to disclose the undercover's name. At the hearing, the undercover testified that he is a detective assigned to the Narcotics Borough Manhattan South Major Case Squad and has been an undercover detective for eleven years, during which time he has been involved in over one thousand narcotics purchases. He testified that he planned to return to the Lower East Side, where Bright was arrested, as early as that day, in connection with his narcotics enforcement work, and that he had to go to that area at least once or twice each week. The undercover stated that he testified previously, in excess of twenty-five times at trial, and the courtroom was always closed to the public and he used his shield number instead of his name for identification. The undercover expressed his desire to be allowed to testify in a closed courtroom using only his shield number as identification. He explained that he feared testifying in open court because it would jeopardize his and his family's safety and would prevent him from operating effectively as an undercover. He explained further that he feared for his safety, based on past incidents, because he had been threatened frequently in the field, was patted down on may occasions, in an effort to locate weapons or audio-transmission devices, and was often asked if he was a police officer. On one occasion, a subject pointed a gun at him inside an apartment, on another, he was threatened and later learned that the subject was armed with a large metal spike, and he was also attacked once, prompting his field team to intervene.

The undercover also worried about his anonymity at the courthouse, where he had over three dozen drug cases pending. He testified that he always used a non-public side entrance to the courthouse and avoided being seen with uniformed officers or in marked police cars. Furthermore, the undercover noted that he usually testified at grand jury proceedings once or twice each week and used a special, undercover officer waiting area to avoid being seen by the

3

public. In addition, the undercover testified that, even with those precautions, a few times he encountered persons from whom he purchased drugs. When one of those persons confronted the undercover, he lied, stating that he was in the courthouse because he was a defendant. According to the detective, he was the primary undercover in about one dozen long-term investigations that included drug and gun sellers, at least one of which involved purchases on the block where Bright's sale took place and two or three others occurred within a few blocks of that site. The detective stated that he could not be replaced easily and that at least twenty subjects of his ongoing investigations remained unapprehended, including some who frequented the area of Bright's arrest. From that number, only twelve to fourteen have been identified, and the detective did not know whether any of them lived near Bright or were related to him.

The court granted a limited courtroom closure, allowing Bright's family members and defense counsel's co-workers to attend when the undercover testified at trial, provided that counsel supplied the prosecutor with the names and dates of birth for those individuals, so it could be determined that no particularized reason to exclude them existed. The court also determined to allow the undercover to testify using only his shield number as identification. Defense counsel identified Bright's mother and his brother as individuals who planned to attend the trial and provided their birth dates and home addresses; both lived less than one block from where the sale occurred.

After the jury was selected, the prosecutor informed the court that Bright's brother had been convicted for: (i) misdemeanor drug possession, across the street from where Bright had sold drugs; (ii) drug possession with intent to sell, in Albany; and (iii) a non-drug-related felony. The court determined to exclude Bright's brother from the courtroom during the undercover's testimony, based on its determination that the brother's misdemeanor drug possession

4

convictions, one of which was for acts that occurred in the vicinity of the location where Bright sold drugs, were sufficient to show heightened concern if the brother was to observe the undercover, which would pose a real risk of compromising the work he was doing and his safety. The court found that no need existed to reopen the Hinton hearing to recall the undercover to testify.

The jury convicted Bright for third-degree criminal sale of a controlled substance and criminal sale of a controlled substance in or near school grounds and acquainted him of third-degree criminal possession of a controlled substance. Bright was sentenced, as a second felony drug offender whose prior conviction was a violent felony, to concurrent terms of six years of incarceration, followed by one and one-half years of post-release supervision.

On direct appeal, Bright argued, inter alia, that his right to a public trial was violated, when the court excluded his brother from the courtroom during the undercover's testimony. The New York State Supreme Court, Appellate Division, First Department affirmed the judgment of conviction and found:

> After making a showing that was concededly sufficient to warrant closure of the courtroom to the general public during the testimony of an undercover officer, the People also made a sufficiently particularized showing to warrant exclusion of defendant's brother, who lived in the vicinity of the present drug sale and had prior drug convictions, one of which involved conduct that occurred across the street from the location of the present sale. . . . Defendant's remaining arguments on this issue are without merit.

People v. Bright, 64 A.D.3d 404, 405, 881 N.Y.S.2d 291, 291 (App. Div. 1st Dep't 2009). The New York Court of Appeals denied leave to appeal to that court. See People v. Bright, 13 N.Y.3d 834, 890 N.Y.S.2d 450 (2009). This timely petition followed.

In his petition, Bright contends the trial court violated his Sixth Amendment right to a public trial, when it excluded his brother from the courtroom during the undercover's testimony

without reopening the Hinton hearing. The respondent contends the trial court "record fully supports the state court's determination that courtroom closure during the undercover officer's testimony was necessary to further a substantial reason or an overriding interest in protecting the undercover officer's safety and effectiveness." Moreover, the requirement that, at the time of the petitioner's trial, the trial court must make a particularized inquiry into whether excluding the petitioner's family members was necessary to advance an overriding interest was established by the Second Circuit and not the Supreme Court, and as such, is not a clearly established federal law. According to the respondent, even if that were clearly established federal law, the court excluded the brother from the courtroom only upon its particularized inquiry into the need to protect the undercover, by excluding the brother from the courtroom. The respondent contends that Bright "cites no federal authority requiring the trial court to reopen its Hinton hearing to make that finding." In his reply, Bright contends that the trial court excluded his brother "without even 'a naked assertion' of concern connected to [Bright]'s family member and, inarguably, without supportive Hinton hearing testimony by the undercover officer." Bright maintains "[t]he trial court's expansion of the breadth of the closure to include [his] brother . . . exceeded the constitutionally permissible scope of closure in order to protect the claimed overriding interest of the ongoing investigations and safety of the undercover officer." Bright contends that his case "manifests a constitutionally defective 'unreasonable application' of the holding in [Waller v. Georgia, 467 U.S. 39, 104 S. Ct. 2210 (1984)], specifically the second of the four prongs comprising the analysis concerning limited courtroom closure under the Sixth Amendment right to a public trial."

## DISCUSSION

*Legal Standard*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court," or if the state court reaches a conclusion different from that of the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520. On a petition for a writ of federal habeas corpus, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). "A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." Bierenbaum v. Graham, 607 F.3d 36, 48 (2d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).

The Sixth Amendment guarantees a criminal defendant a right to a public trial. See U.S. Const. amend. VI. That right is not absolute, and the courtroom may be closed where: (1) a party seeking closure shows an overriding interest that is likely to be prejudiced; (2) the closure is not broader than necessary to protect that interest; (3) the court considered reasonable alternatives to closure; and (4) the court made adequate findings to support the closure. See Waller, 467 U.S. at 48, 104 S. Ct. at 2216.

*Application of Legal Standard*

When he filed his amended petition, Bright used a form "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody," provided as an appendix to the Rules Governing Section 2254 Cases in the United States District Courts. However, he failed to make any argument in a separate memorandum, as directed by the instructions provided for using that form. In his reply, Bright argues that "the trial court's post-Hinton hearing conclusion, based on mere proffers by the state, to prohibit [his brother] from being present during the trial testimony of [the undercover]" violated his right to a public trial. "Arguments may not be made for the first time in a reply brief." Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993). Even in his reply, Bright failed to make citation to any clearly establish federal law requiring a trial court to re-open a Hinton hearing in order to make its courtroom-closure determination, and the Court finds none. Thus, Bright failed to meet the burden of proof imposed on him by 28 U.S.C. § 2254(d), and he is not entitled to habeas corpus relief.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 650, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
June 29, 2011

Respectfully submitted,

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Joseph J. Perkovich, Esq.  
Ashlyn Dannelly, Esq.